Case No. 5:24-cv-00138

| | |
|---|---|
| CHERYL JOHNSTON, <br><br> Plaintiff, <br><br> v. <br><br> NATHAN HEFNER, in his individual capacity; THE CITY OF CLAREMONT, NORTH CAROLINA; VICTORY BUILDERS, LLC; DANIEL HAMILTON, in his individual capacity; TPM PROPERTIES LIMITED PARTNERSHIP, <br><br> Defendants. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

Plaintiff Cheryl Johnston ("Plaintiff" or "Ms. Johnston") brings this action against Defendants Nathan Hefner, in his individual capacity ("Hefner"), the City of Claremont, North Carolina ("City"), Victory Builders, LLC ("Builders"), Daniel Hamilton, in his individual capacity ("Hamilton"), and TPM Properties Limited Partnership ("TPM") (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.     This action seeks to remedy the false arrest and malicious prosecution of Ms. Johnston by Defendants, in coordination with one another. The arrest and prosecution were undertaken by Defendant Hefner, a uniformed police officer with the City of Claremont

Police Department, which is an agency within and controlled by the Defendant City of Claremont.

2.       Defendant Hefner coordinated, without probable cause, with Defendant Hamilton and other employees and agents of Defendants Builders and TPM – who are private developers – to falsely assert that Ms. Johnston was blocking a driveway to a vacant lot in violation of a local ordinance. In fact, no such driveway existed.

3.       Defendant Hefner then bootstrapped onto this purported "investigation" an additional, baseless criminal charge against Ms. Johnston for resisting, delaying, and obstructing an officer.  The alleged basis for this charge was that she failed to move her vehicle – which was appropriately parked on curb on a public street next to her house – or go back into her house to provide to Defendant Hefner with her driver's license, even though she was standing in her own yard.

4.       Defendant City, through its then Chief of Police for Claremont, Gary Bost, and others, assented to and condoned the false arrest and malicious prosecution of Ms. Johnston without probable cause, thereby ratifying this improper conduct.

5.       This false arrest and malicious prosecution were initiated and coordinated by private developers – Defendants Hamilton, Builders and TPM – acting through their employees and agents to wield the power of local law enforcement against Ms. Johnston. The true motivation for these Defendants' misconduct was to silence Ms. Johnston's repeated complaints about their non-compliance with laws and rules that protect property owners, like herself, and the community from construction-related erosion and run-off.

6.      Following her arrest on June 1, 2021, Ms. Johnston was prosecuted for the criminal charge and ordinance violation initiated by Defendant Hefner and bolstered by the efforts of the private developers, Defendants Hamilton, Builders, and TPM.

7.      On July 30, 2021, all the charges against Ms. Johnston were dismissed by the Catawba County District Attorney's Office.

8.      Ms. Johnston brings this civil rights action against Defendant Hefner and Defendant City pursuant to 42 U.S.C. § 1983, for the unreasonable seizure of her person and the unreasonable initiation of criminal proceedings without probable cause in violation of her Fourth and Fourteenth Amendments rights under the United States Constitution, and against all Defendants under common law for malicious prosecution, false imprisonment, negligence/gross negligence/recklessness, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery.

## PARTIES

9.      **Plaintiff Cheryl Johnston ("Ms. Johnston")** was, at all relevant times, a resident and citizen of the City of Claremont, located in Catawba County, North Carolina. She owned a home adjacent to a property that was being developed by Defendants Builders and TPM.

10.     **Defendant Nathan Hefner** ("Hefner"), upon information and belief, is a resident and citizen of Catawba County, North Carolina. At all relevant times, Defendant Hefner was an employee of Defendant The City of Claremont ("City") in his capacity as a police officer with the City of Claremont Police Department ("CCPD"). At all relevant

times, Defendant Hefner was acting under color of state law and in the course and scope of his employment as a police officer of Defendant City. Plaintiff sues Defendant Hefner in his individual capacity.

11.     **Defendant The City of Claremont, North Carolina** ("Defendant City") is a municipal corporation in Catawba County, North Carolina, organized under the rules and regulations of Catawba County and the State of North Carolina.  The CCPD is an agency of Defendant City and—through its policymakers—has final approval over policies implemented by the CCPD.

12.     Upon information and belief, Defendant City has waived its governmental immunity for the conduct of CCPD officers by obtaining insurance coverage that will indemnify Defendant Hefner from the claims in this case.  Accordingly, Defendants City and Hefner have waived any governmental or public officer immunity they might claim.

13.     Defendants City and Hefner are responsible for the actions, customs, policies, and/or practices alleged in this Complaint and/or is a necessary party for obtaining relief.  The injuries inflicted on Ms. Johnston occurred because of the actions or inactions of Defendants City and Hefner.

14.     **Defendant Victory Builders, LLC** ("Defendant Builders") is a limited liability company authorized and existing under the laws of North Carolina and both its principal office, at 2801 S Cannon Blvd, Kannapolis, NC 28083, and registered office, at 3960 Trinity Church Road, Concord, NC 28027, are in Cabarrus County, North Carolina.

15.     **Defendant Daniel Hamilton** ("Hamilton") is a citizen and resident of Cabarrus County, North Carolina. At all relevant times, Defendant Hamilton was the managing member and agent of Defendant Victory Builders, LLC and, upon information and belief, an agent of Defendant TPM Properties Limited Partnership.

16.     **Defendant TPM Properties Limited Partnership** ("Defendant TPM") is a limited partnership authorized and existing under the laws of North Carolina, and its registered office, at 3816 Mooreland Farms Rd, Charlotte, NC 28226, is in Mecklenburg County, North Carolina.

## JURISDICTION AND VENUE

17.     Plaintiff brings this action under 42 U.S.C. § 1983 for violations of her civil rights as guaranteed by the United States Constitution, and under the common law of North Carolina for false arrest and malicious prosecution without probable cause, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery.

18.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is an action based on violations of 42 U.S.C. § 1983 (Counts I, II, III, and IV).

19.     This court has supplemental jurisdiction over Plaintiff's state law claims (Counts V, VI, VII, VIII, IX, X, XI, XII) pursuant to 28 U.S.C. § 1367.

20.     Defendants are each subject to the personal jurisdiction of this court because they each reside in or have their principal place of business in the following counties:

Catawba (Defendant Hefner and Defendant City), Mecklenburg (Defendant TPM), and Cabarrus (Defendant Hamilton and Defendant Builders), all located in North Carolina, and Catawba County is within this judicial district. Further, Defendants are each present in and regularly conduct affairs and business activities in this judicial district and engaged in the conduct that is the subject of this lawsuit within its judicial district.

21.     Venue is proper in the Western District of North Carolina, as the events giving rise to this action occurred in Catawba County, and all Defendants reside or have their principal offices in Catawba (Defendant Hefner and Defendant City), Mecklenburg (Defendant TPM), and Cabarrus (Defendant Hamilton and Defendant Builders) Counties, and Catawba and Mecklenburg counties are located within this judicial district.

<u>**FACTS**</u>

22.     In 2021, Ms. Johnston was a 72-year old grandmother and retired public-school teacher with two masters degrees.

23.     She lived at 2729 Emperor Street, Claremont, North Carolina, a home that she owned with her husband, a retired sergeant with the Lincoln County Sheriff's Office who served on its SWAT unit, trained other officers, and had since taken up work as a truck driver.

24.     Ms. Johnston took great joy in working in her yard.

25.     Her house was next door to empty lots on Riber Lane, then owned by Defendant TPM and on which Defendants Hamilton and Builders were preparing to build houses in the City of Claremont, North Carolina.

26.     On or about May 6, 2021, Defendant Hamilton, on behalf of Defendant Builders, applied to Catawba County for a building permit to build a home on the vacant lot, 3136 Riber Lane (Claremont, NC), next door to Ms. Johnston's home.

27.     Defendant Hamilton also applied for the building permit for 3136 Riber Lane on behalf of Defendant TPM.

28.     In their building permit application for 3136 Riber Lane, Defendant Hamilton certified that all the work would comply not only with the building code but also "all other applicable state and local laws, ordinances, and regulations."

29.     Upon information and belief, Defendants Hamilton, Builders, and TPM noticed that soil disturbances arising from some of the lots near Ms. Johnston's house were occurring on or about May 6 and 7, 2021.

30.     Defendant Hamilton, on behalf of Defendants Builders and TPM, applied to Catawba County for an erosion control permit on or about August 13, 2021.

31.     Upon information in belief, Catawba County did not issue a building permit for 3136 Riber Lane until August 25, 2021.

32.     Also, Catawba County, through its water resource engineer, Toni Norton, did not approve Defendants Hamilton, Builders, and TPM's erosion control plan and permit application until August 24, 2021.

33.     Around two months before the permits were issued, on or about June 1, 2021, upon information and belief, Defendant Hamilton, the managing member and agent of Defendant Builders and an agent of Defendant TPM, was upset with Ms. Johnston because

the day before Ms. Johnston had complained to Defendant Hamilton and to local environmental authorities about erosion-based run-off from Defendant Hamilton, Defendant Builders, and Defendant TPM's land preparation and construction work on the Riber Lane lots that was damaging, *inter alia*, Ms. Johnston's yard.

34.    Upon information and belief, on or about June 1, 2021, Defendant Hamilton used profanity toward Ms. Johnston when she raised these concerns with him about the erosion based run-off from the construction work on the Riber Lane lots.

35.    That same day, when Ms. Johnston, who was alone at the time as her husband was out of town for work, was driving back to her home, Defendant Hamilton raised his middle finger at her in a profane gesture as she was pulling up to her driveway, which is accessed from Riber Lane.

36.    When she got to her home that same day, she parked her SUV alongside the curb on Riber Lane, a public street, where the back half of her SUV was in front of her yard and the front half was apparently in front of the vacant lot, owned then by Defendant TPM, that is now 3136 Riber Lane.

37.    Ms. Johnston had planned to work in her garage that day.

38.    On that day, no driveway had been cut out of the curb or otherwise existed for what is now 3136 Riber Lane, such that Ms. Johnston's SUV was not blocking a driveway.

39.    Around that time on June 1, 2021 that she parked her SUV on Riber Lane, upon information and belief, Defendant Hamilton called the City of Claremont Police

Department (CCPD) and requested one or more officers to come out to investigate the claims they were making about Ms. Johnston.

40. Upon information and belief, Defendant Hamilton knew that Ms. Johnston lived at 2729 Emperor Street and communicated that to the CCPD either before or soon after police arrived at or near the Riber Lane lots on June 1, 2021.

41. That same day, June 1, 2021, at least two CCPD officers, one being Defendant Hefner, came out to meet Defendant Hamilton, Defendant Builder's employees or agents, and Defendant TPM's employees or agents right near the Riber Lane lots across from Ms. Johnston's driveway.

42. The CCPD officers, including Defendant Hefner, were wearing CCPD issued body-activated cameras.

43. Upon information and belief, on that day Defendant Hamilton made accusations to one or more CCPD officers about Ms. Johnston, including calling her crazy and referring to her using profanity. Upon information and belief, Defendant Hamilton explained to CCPD officers, including Defendant Hefner, that Ms. Johnston had previously called Catawba County officials to report them, including himself, Defendant Builders, and Defendant TPM, about their construction practices with the Riber Lane lots causing problems. Upon information and belief, Defendant Hamilton recognized that Ms. Johnston was not a danger but expressed a desire that CCPD officers should have her locked up. The CCPD officers laughed. One CCPD officer, while discussing how they could look up ordinances to see what violation(s) they could charge Ms. Johnston with committing,

mused that if Ms. Johnston had raised her middle finger, that could be considered an ordinance violation.

44.     Upon information and belief, on that day, Defendant Hamilton claimed to CCPD that Ms. Johnston was blocking them, including Defendants Builders and TPM, from accessing a vacant lot, which is now 3136 Riber Lane, with her SUV, in that, in their supposed view, they could not get onto the vacant lot with equipment, where just the front end of Ms. Johnston's SUV was parked alongside the cul-de-sac curb in front of that vacant lot.

45.     Upon information and belief, on that day Defendant Hamilton requested that one or more of the CCPD officers just arrest Ms. Johnston as he referred to her with a profane word. One of the CCPD officers asked Defendant Hamilton where they planned on cutting the driveway in the curb for the vacant lot that is now 3136 Riber Lane. The CCPD officer went on to explain to Defendant Hamilton that there was a local ordinance that made it a violation to block a driveway.

46.     On that day, several of the CCPD officers talked to Ms. Johnston. She was standing in her own yard. She correctly informed the CCPD officers that she had a right to park alongside the public street in her own neighborhood. At least one CCPD officer accused her of being unreasonable.

47.     On that day, with the CCPD officers watching and acting on advice from the CCPD officers on what would supposedly be an instance of Ms. Johnston violating the law, upon information and belief, Defendant Hamilton, directing the actions of, and acting in

concert with, one or more other employees and or agents of Defendant Builders and Defendant TPM, drove stakes into the ground, adorned with small flags, at the edge of the Riber Lane vacant lot right next to the front half of Ms. Johnston's SUV. The CCPD officers, including Defendant Hefner, then claimed that Ms. Johnston was violating a local ordinance by supposedly blocking a "driveway" and proclaimed that the driveway was created by the flag adorned stakes being driven into the ground on the vacant lot.

48.     Upon information and belief, one CCPD officer took photographs of Ms. Johnston's SUV near the stakes in order to create "evidence" for the purported local ordinance violation.

49.     On that day, Ms. Johnston correctly responded that she was not blocking a driveway. Yet at least one CCPD officer demanded that she produce her driver's license or other official identification, while Ms. Johnston was standing in her yard in front of the house she owned with her husband, a truck driver and retired law enforcement officer who was out of town for work. Ms. Johnston declined to go inside her home to get her driver's license.

50.     On that day, CCPD officers, including Defendant Hefner, then physically seized her in her yard and forced Ms. Johnston into handcuffs. She asked why they were doing that. One CCPD officer explained that she was being arrested for failing to produce her driver's license or identification card and for violating a local ordinance by blocking a supposed "driveway". Then Ms. Johnston sought to de-escalate the situation and offered to go get her driver's license, despite Defendants knowing who she was and where she

lived. Despite that overture, Defendant Hefner, and one or more other CCPD officers, continued with the seizure and arrest of Ms. Johnston.

51. On that day, Ms. Johnston then asked the CCPD officers, including Defendant Hefner, if she could move her SUV, since she was being arrested, off the street and into her garage. The CCPD officers, including Defendant Hefner, refused and said it was too late; the SUV would have to be towed to a tow yard. The CCPD officers also refused to tell her where it would be towed, and they informed her that she would get that information later. Ms. Johnston's SUV was damaged more than $1,000.00 during the towing process.

52. On that day, Ms. Johnston complained to the CCPD officers, including Defendant Hefner, that the handcuffs were tight and hurt. One CCPD officer told her she should try to rotate her hands and arms while handcuffed. In the process, the CCPD officers, including Defendant Hefner, broke Ms. Johnston's Apple Watch, a gift from her daughter.

53. On that day, the CCPD officers, including Defendant Hefner, yelled at Ms. Johnston that if she did not make the arrest easy for them, they would drag her into Defendant Hefner's patrol car and charge her with yet another criminal offense.

54. On that day, CCPD officers mused about how they could book Ms. Johnston, who was alone that day, as a "Jane Doe" in the Catawba County jail such that she would be incarcerated indefinitely until somebody came to produce her driver's license for her to

the jail, despite Defendant Hefner and CCPD officers knowing full well who she was and where she lived.

55.     On that day, Defendant Hefner placed Ms. Johnston into the secured backseat of his patrol car and drove her to the Catawba County magistrate's office and jail.

56.     While in the back of his patrol car, Ms. Johnston complained to Defendant Hefner about being in pain from the hand cuffs while he was driving her to the jail, and she explained to him that being cuffed behind her back was extra painful.

57.     During the transport, Defendant Hefner told Cheryl that he was not allowed to bring his fuzzy handcuffs, implying he has that kind of sex toy as a form of sexual harassment of a 72 year-old woman handcuffed behind her back in his patrol car.

58.     During the transport, Ms. Johnston informed Defendant Hefner that she had bruises. She also tried to inform him about her medical issues and medications.

59.     On that day, Defendant Hefner taunted Ms. Johnston that she would face indefinite incarceration in the jail as she was going to be booked as a "Jane Doe."

60.     On that day, Ms. Johnston also expressed to Defendant Hefner, after he taunted her about going to jail for an indefinite period of time, her concern for her dog not being able to get enough water in the heat, since no one else was home.

61.     On that day, the then Chief of Police for the City of Claremont Police Department's, Gary Bost (Chief Bost), who was Ms. Johnston's neighbor at the time and lived on her street, arrived right outside Ms. Johnston's house.

62.     On that day, after at least one CCPD officer told then Chief Bost what happened, including that Ms. Johnston had been arrested, Chief Bost laughed about what his officers did giving his approval and assent. Also, upon information and belief, the city manager, Jason Brown, for the City of Claremont showed up at the scene too, talked with Chief Bost, learned what happened to Ms. Johnston, and gave his approval and assent for Ms. Johnston's arrest.

63.     On that day, during her ride to the jail, Officer Hefner told Ms. Johnston that he knew her name and who she is because he ran it in a database.

64.     Upon information and belief, on that day, while keeping Ms. Johnston in handcuffs the entire time she was at the Catawba County magistrate's office and jail, Defendant Hefner presented to the Catawba County magistrate the theory orchestrated by Defendants Hamilton and other employees and or agents of Defendants Builders and TPM along with Defendant Hefner and other CCPD officers, that Ms. Johnston had blocked a "driveway", but could not give an address for the supposed "driveway", in violation of a local ordinance and then resisted, delayed, and obstructed his "investigation" into that purported ordinance violation by not moving her car and by not identifying herself.

65.     On that day, the magistrate gave Ms. Johnston an unsecured bond for the criminal case and her first court date was set for July 12, 2021. There was no issue with the magistrate identifying who Mr. Johnston was and where she lived.

66.     Ms. Johnston was also fearful about what could happen to her immigration status as a result of the criminal prosecution initiated against her, since she was a citizen of Canada and only a legal permanent resident of the United States (green card holder).

67.     After she was released, Ms. Johnston sought out counsel to defend her in the pending criminal case and paid a flat fee of $2,500.00 to secure representation.

68.     Ms. Johnston's July 12, 2021 court date in her criminal case in the Catawba County district court was continued.

69.     On July 30, 2021, an assistant district attorney with the Catawba County District Attorney's Office voluntarily dismissed the charges against Ms. Johnston, which resulted in a complete dismissal of the criminal proceeding in her favor on the basis that the result was in the "[b]est [i]nterest of [j]ustice" in *State v. Cheryl Johnston*, No. 21-cr-52349 (Catawba County).

70.     Traumatized by what happened to her as a result of Defendant City, Defendant Hefner, and CCPD's willingness to collude with a private developer (Defendants Hamilton, Builders, and TPM) to foster a specter of lawlessness and weaponize its arrest powers to silence a concerned citizen bringing to light environmental law violations, Ms. Johnston and her husband put their house in the City of Claremont on the market and quickly accepted an offer and sold it on August 10, 2021 for appx. $30,000 less than its estimated market value.

71.     Ms. Johnston and her husband moved out of state.

72.     Soon after her arrest and release on June 1, 2021, Ms. Johnston also had to get ongoing medical treatment for injuries she suffered during the arrest process. Ultimately, as a direct and proximate result of the Defendants' actions, she underwent a surgery on her thumb, where the surgeon inserted wires in between two joints in her thumb.

73.     As a direct and proximate result of being wrongfully arrested and prosecuted through the collusion of Defendants Hamilton, other agents and or employees of Defendants Builders and TPM, Defendant Hefner, other officers of CCPD, and Defendant City, Ms. Johnston suffered serious and permanent injury including but not limited to impairment and loss of motion in her right thumb, medical expenses, partial loss of use of the body, disability, pain and suffering, humiliation, indignities, and embarrassment, damage to reputation, and severe emotional distress and will continue to suffer serious and permanent injury including but not limited to complications from the injury to her right thumb, future medical expenses, loss of earning potential, partial loss of use of the body, disability, and pain and suffering, humiliation, indignities, and embarrassment, damage to reputation, and severe emotional distress.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS—42 U.S.C. § 1983—FOURTH AND FOURTEENTH AMENDMENT CLAIM FOR MALICIOUS PROSECUTION**
**(Defendant Hefner)**

74.     Paragraphs 1 through 73 of the Complaint are incorporated by reference.

75.     As described above, a criminal proceeding was instituted and continued against Ms. Johnston, despite her actual innocence. The prosecution was initiated and continued without probable cause to believe that Ms. Johnston had committed the crime

and ordinance violation with which she was charged in violation of her clearly established rights at that time of which reasonable people in Defendant Hefner's position knew or should have known.

76.     At the time Ms. Johnston was arrested, there was no probable cause to believe that she had or was blocking a driveway in violation of the City of Claremont Ordinance § 7-1-13, since a driveway did not exist where her SUV was parked, and there was no probable cause that she was resisting, delaying, or obstructing a purported investigation into whether that ordinance was violated.

77.     Defendant Hefner was the sole witness before the magistrate who issued the charging instrument, a magistrate's order, which was based solely on information provided by Defendant Hefner under oath, against Ms. Johnston for a (1) misdemeanor criminal offense of resisting, delaying, or obstructing a law enforcement officer's claimed investigation into a local ordinance violation and (2) for blocking a driveway in violation of a local ordinance. The "case" that Defendant Hefner presented to the magistrate was one that had been manufactured collectively by Defendants.

78.     At the time the Defendants, including Defendant Hefner, initiated criminal proceedings against Ms. Johnston, Defendants knew the following:

(a) There was no driveway on the then vacant Riber Lane lots where Defendants Hamilton, Builders, and TPM were building houses, including at the lot that is now 3136 Riber Lane;

(b) Ms. Johnston's SUV was not parked, in whole or part, in front of any driveway for a vacant lot;

(c) Ms. Johnston's SUV was parked alongside the curb on a public road;

(d) The identity of Ms. Johnston, the fact that she was married, and the fact that she lived at 2729 Emperor Street, and the fact that she was standing in her own yard;

(e) That Ms. Johnston declining to move her SUV that was parked alongside a curb on a public road and declining to go inside her house to produce her driver's license as she was standing in her own yard showed that she was not acting purposefully and deliberately in violation of law, or in other words, they knew she was not acting willfully in violation of the law;

79. There existed no valid evidence, or even a valid investigation into a purported ordinance violation, upon which to initiate charges against Ms. Johnston at the time of her arrest on June 1, 2021. Yet Defendant Hefner pressed ahead with the criminal prosecution of Ms. Johnston.

80. The arrest of Ms. Johnston without probable cause violated her Fourth and Fourteenth Amendment rights.

81. Defendant Hefner's unconstitutional conduct was committed in the course and scope of their employment with Defendant City and the City of Claremont Police Department (CCPD) and under color of state law.

82. The criminal proceeding initiated by the unconstitutional arrest of Ms. Johnston was finally terminated in her favor on July 30, 2021, when an assistant district attorney in Catawba County voluntarily dismissed the criminal case and charges against Ms. Johnston.

83. As a direct and foreseeable consequence of Defendant Hefner's misconduct, Ms. Johnston was unreasonably and unlawfully subjected to criminal prosecution.

84.     Defendant Hefner's actions, namely in their law enforcement capacity described above, were committed under color of law.

85.     As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered physical, emotional, and pecuniary injuries as described in this Complaint, and will continue to incur medical and other costs, to be proved through discovery and trial.

86.     Defendant Hefner's actions described above deprived Ms. Johnston of the securities, rights, privileges, and immunities secured by the Constitution of the United States of America and cause her other damages in an amount to be proven at trial.

87.     Ms. Johnston is entitled to recover from Defendant Hefner all damages allowed by law, including compensatory and punitive damages.

88.     In the alternative, Defendant Hefner's actions were willful, wanton, reckless, and/or conducted with actual malice towards Ms. Johnston or with a reckless and outrageous disregard to the health, safety, and welfare of others, including Ms. Johnston. Accordingly, Ms. Johnston is entitled to recover punitive damages.

89.     Ms. Johnston is also entitled to recover reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS—42 U.S.C. § 1983— FOURTH AND FOURTEENTH AMENDMENT CLAIM FOR FALSE ARREST & SEIZURE WITHOUT PROBABLE CAUSE**
**(Defendant Hefner)**

90.     Paragraphs 1 through 89 of the Complaint are incorporated by reference.

91.     Defendant Hefner lacked reasonable suspicion to detain Ms. Johnston in her yard and lacked probable cause to seize and handcuff her on the charges of supposedly willfully resisting, delaying, and obstructing the claimed lawful discharge of his duties and for the local ordinance violation of blocking a supposed "driveway."

92.     At the time that Ms. Johnston was seized, Defendant Hefner knew that Ms. Johnston's SUV was lawfully parked alongside a curb on a public road, he knew:

(a) That her SUV was not blocking any driveway alongside it because none existed.

(b) That Ms. Johnston's identity and where she lived—including the fact that she was standing on her property.

(c) That he was not actually investigating the violation of an ordinance concerning blocking driveways since no driveway existed on the Riber Lane lots.

(d) That there was no ordinance violation at issue where having Ms. Johnston's driver's license would further that investigation.

(e) That Ms. Johnston did not pose a danger and was simply asserting her legal rights and being critical of the CCPD and the private developers (Defendants Hamilton, Builders, and TPM).

93.     Defendant Hefner's actions, namely in their law enforcement capacity described above, were committed under color of law.

94.     The acts of Defendant Hefner violated Ms. Johnston's Fourth and Fourteenth Amendment rights, clearly established at the time, to be free from an unreasonable seizure lacking probable cause that a crime was or was being committed by Ms. Johnston, and this violation of her clearly established rights was a violation that reasonable people in Defendant Hefner's position knew or should have known.

95.     As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered and continues to suffer physical, emotional, and pecuniary injuries, including medical and other costs, as described in this Complaint and to be determined by a jury at the trial of this matter.

96.     Defendant Hefner's actions described above deprived Ms. Johnston of the securities, rights, privileges, and immunities secured by the Constitution of the United States of America and caused her other damages in an amount to be determined by a jury at the trial of this matter.

97.     Ms. Johnston is entitled to recover from Defendant Hefner all damages allowed by law, including compensatory and punitive damages.

98.     In the alternative, Defendant Hefner's actions were willful, wanton, reckless, and/or conducted with actual malice towards Ms. Johnston or with a reckless and outrageous disregard to the health, safety, and welfare of others, including Ms. Johnston. Accordingly, Ms. Johnston is entitled to recover punitive damages.

99.     Ms. Johnston is also entitled to recover reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT III
## VIOLATION OF CIVIL RIGHTS—42 U.S.C. § 1983—UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER *MONELL*
### (Defendant The City of Claremont)

100.    Paragraphs 1 through 99 of the Complaint are incorporated by reference.

101.    At all relevant times, Defendant The City of Claremont ("Defendant City"), through its operation of its city agency City of Claremont Police Department, directly

employed Defendant Hefner as a police officer. At all times material to this Complaint, Defendant City—by and through the Mayor and the Police Chief—acted as the final policy maker for the policies, customs, and practices of the City of Claremont Police Department.

102. The actions of Defendant Hefner and the injuries suffered by Ms. Johnston were actually and proximately caused by the then-existing policies, customs, and practices, whether official or unofficial, that were established or ratified by Defendant City.

103. Defendant City expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged in this Complaint and knew or should have known that such conduct was inappropriate and unlawful and would result in violations of constitutional rights, including those of Ms. Johnston.

104. The official and unofficial policies and customs of Defendant City, through the City of Claremont Police Department's unofficial policies and customs, one of its city agencies, permitted and encouraged the improper and unlawful seizures and arrests of its citizens.

105. In addition, or in the alternative, upon information and belief, these actions and the resultant harms were actually and proximately caused by a condoned custom, constructively or actually known to Defendant City.

106. These policies and customs were in violation of Ms. Johnston's rights under the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

107.    Specifically, the official and unofficial policies and customs promulgated by Defendant City were unconstitutional insofar as they:

(a) Tacitly protected officers through improper means, even where an officer used his authority to arrest a citizen without probable cause and collude with private citizens to manufacture evidence in furtherance of an unlawful arrest;

(b) Sanctioned abusive conduct by officers – including Defendant Hefner's unlawful arrest of Ms. Johnston unsupported by probable cause and based on an attempt to manufacture evidence – by failing to discipline or terminate them;

(c) Were recklessly indifferent and manifestly disregarded the rights of the people of the City of Claremont and the surrounding community in such other ways as described in this Complaint;

(d) Failed to hold officers accountable for instances of investigatory detentions of people unsupported by reasonable suspicion and seizures and arrests, unsupported by probable cause.

108.    Through these policies and customs, Defendant City knowingly, willfully, and intentionally disregarded the constitutional rights of citizens of the City of Claremont, including Ms. Johnston.

109.    These policies and customs were the actual and proximate cause of Ms. Johnston's injuries and the deprivation of her constitutional rights.

110.    As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered and continues to suffer physical, emotional, and pecuniary injuries, including medical and other costs, as described in this Complaint and to be determined by a jury at the trial of this matter.

111.    Ms. Johnston is also entitled to recover reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS—42 U.S.C. § 1983—FAILURE TO TRAIN
AND/OR SUPERVISE UNDER *MONELL***
**(Defendant The City of Claremont)**

112.    Paragraphs 1 through 113 of the Complaint are incorporated by reference.

113.    Defendant City, through its operation of city agency the City of Claremont Police Department, had control over the training and supervision of the City of Claremont Police Department officers, including Defendant Hefner.

114.    Defendant City failed to properly train and/or supervise its officers, despite having knowledge of the need for better and additional training and supervision.

115.    Specifically, Defendant City, through its operation of city agency the City of Claremont Police Department, failed to train and/or supervise officers of the City of Claremont Police Department ("CCPD"), including Defendant Hefner, in the following respects. It:

(a) Provided no or woefully inadequate training and/or supervision on investigatory detentions needing to be based on reasonable suspicion, and arrests and seizures needing to be based on probable cause, especially in the context of charging the crime of resisting/delaying/obstructing a law enforcement officer;

(b) Conducted no or little training and/or supervision to teach officers what conduct might constitute a detention, arrest, or seizure not based on reasonable suspicion or probable cause or inappropriate abuse of power;

(c) Failed to establish appropriate procedures to train and/or supervise officers on how and/or when to report instances of arrests or seizures not supported by probable cause or abuse of power between officers and people in the community;

(d) Provided officers with training and/or supervision that was vague, ineffective and lacked clear standards;

(e) Trained and/or supervised officers in a manner that discounted or discouraged accountability;

(f) Were otherwise recklessly indifferent and manifestly disregarded the rights of the people in the community in training and/or supervision as described in this Complaint.

116.    Defendant City created, maintained, and executed the policies, practices, and customs set forth above, which constitute manifest and critical training failures. These training policies, practices and customs were known to Defendant City, who trained officers of the City of Claremont Police Department, including Defendant Hefner, to be inadequate, dangerous, and manifestly likely to cause harm.

117.    The repeated and sustained failures of the Defendant City to properly train/or supervise officers of the City of Claremont Police Department constituted deliberate indifference to and reckless disregard for the rights and welfare of Ms. Johnston and the other citizens of the City of Claremont.

118.    As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered and continues to suffer physical, emotional, and pecuniary injuries, including medical and other costs, as described in this Complaint and to be determined by a jury at the trial of this matter..

119.    Ms. Johnston is also entitled to recover reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT V
## COMMON LAW MALICIOUS PROSECUTION
**(Defendant Hefner, Defendant Daniel Hamilton, Defendant Victory Builders, LLC, Defendant TPM Properties Limited Partnership)**

120.    Paragraphs 1 through 119 of the Complaint are incorporated by reference.

121.    Any applicable governmental immunity has been waived by Defendant City and CCPD, upon information and belief, purchasing maintaining insurance, or its participation in a municipal pool to cover liability for Defendant Hefner's conduct.

122.    On or about June 1, 2021, the Defendants Hefner, Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, and acting individually and in concert with each other, instituted, procured, and participated in, and caused the detention, seizure, and arrest of Ms. Johnston.

123.    As a result, Ms. Johnston was formally charged with (a) blocking a driveway in violation of City of Claremont Ordinance Sec. 7-1-131 and for (b) resisting, delaying, and obstructing a police officer by refusing to move her car after a request to do so by the officer and for refusing to give her name, birthday, and address while the officer was investigating the blocking a driveway ordinance violation under N.C. Gen. Stat. § 14-223.

124.    Defendant Hamilton, and Defendants Builders and TPM, acting through their employees and agents, including Defendant Hamilton, being brought against, called CCPD officers to come out to where Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, were working on an empty lot and falsely claimed to CCPD officers, including Defendant

Hefner, that Ms. Johnston was committing a crime or ordinance violation of blocking a driveway with her SUV, but, in fact, no driveway existed.

125. Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM false claims led Ms. Johnston to suffer prosecution in the Catawba County district court in *State v. Cheryl Johnston*, No. 21CR052349.

126. At the time that Ms. Johnston was detained, seized, and arrested, there was no probable cause, or reasonable suspicion, for Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, to believe that Ms. Johnston had committed any criminal offense or ordinance violation. The facts and circumstances known to Defendants Hefner, Hamilton, Builders, and TPM at the time would not have induced a reasonable person of caution to believe that there was sufficient evidence amounting to a fair probability that Ms. Johnston was guilty of a crime or an ordinance violation or that the arrest and prosecution of her was justified. Nor were there specific, articulable facts, amounting to more than a mere hunch, that Ms. Johnston like was, or had, committed an offense known to any of these Defendants.

127. Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, acted with malice when they sought to have Ms. Johnston charged with a crime in that Defendant Hamilton, and Defendants Builders and TPM acted intentionally and without excuse or just cause, and acted with a reckless and callous disregard, and deliberate indifference, to Ms.

Johnston's rights when it sought to have her charged with a crime and ordinance violation and prosecuted despite a lack of probable cause.

128.    Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, also acted with malice by the fact that their primary goal in commencing the criminal proceeding through the arrest and prosecution of Ms. Johnston was to advance their collateral and private interest in building and selling homes for a profit without any kind of costly disruption to their project by a concerned neighbor, such as Ms. Johnston.

129.    Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, also initiated a wrongful criminal proceeding against Ms. Johnston out of a motive of ill will, spite, grudge, revenge, and oppression such that they acted with actual malice against Ms. Johnston warranting punitive damages, as set out further below.

130.    The criminal charges brought against Ms. Johnston were completely terminated in her favor in that the criminal proceeding and case in the Catawba County district court was voluntarily dismissed by the Catawba County District Attorney's Office the following month, on or about July 30, 2021, in *State v. Cheryl Johnston*, No. 21CR052349.

131.    As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered physical, emotional, and pecuniary injuries as described in this

Complaint, and will continue to incur medical and other costs, to be proved through discovery and trial.

132.     Ms. Johnston is entitled to recover from Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, an amount to be determined by the jury.

**COUNT VI**
**COMMON LAW FALSE IMPRISONMENT**
**(Defendant Hefner, Defendant Daniel Hamilton, Defendant Victory Builders, LLC,**
**Defendant TPM Properties Limited Partnership)**

133.     Paragraphs 1 through 132 of the Complaint are incorporated by reference

134.     On or about June 1, 2021, Defendants Hefner and Hamilton, and Defendants Builders and TPM, acting through its employees and agents, including Defendant Hamilton, acting individually and in concert with each other, intentionally caused, instituted, or participated in the detention, seizure, and arrest of Ms. Johnston, deprived of her liberty against her will, and that deprivation was not supported by reasonable suspicion or probable cause that an offense had been committed by Ms. Johnston.

135.     Ms. Johnston's detention, seizure, and arrest was based on a claimed "investigation" into a driveway ordinance violation, when in fact no driveway existed, and Defendant Hefner's unlawful demands that Ms. Johnston's move her appropriately parked SUV and go into her house to produce her driver's license as she was standing in her own yard, therefore her detention, seizure, and arrest was not supported by reasonable suspicion or probable cause.

136.   On Riber Lane, Defendant Hefner, a CCPD police officer, did not have a warrant to arrest Ms. Johnston, and did not have reasonable suspicion or probable cause that Ms. Johnston had committed a crime in their presence, which further demonstrates the unlawfulness of her detention, seizure, and arrest.

137.   Defendant Hefner's conduct occurred in the course and scope of their employment as a law enforcement officer and under color of state law.

138.   Defendant Hefner's conduct, as set out above, was reckless and malicious, and public officer immunity therefore does not apply to their conduct.

139.   Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, acting through its employees and/or agents, including Defendant Hamilton, acted with malice when they sought to have Ms. Johnston detained, seized , and arrested in that Defendant Hamilton, and Defendants Builders and TPM acted intentionally and without excuse or just cause, and acted with a reckless and callous disregard, and deliberate indifference, to Ms. Johnston's rights when it sought to have her charged with a crime and ordinance violation and prosecuted despite a lack of both reasonable suspicion and probable cause that Ms. Johnston committed an offense.

140.   As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered physical, emotional, and pecuniary injuries as described in this Complaint, and will continue to incur medical and other costs, to be proved through discovery and trial.

141.    Ms. Johnston is entitled to recover from Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM, an amount to be determined by the jury.

## COUNT VII
## COMMON LAW NEGLIGENCE/GROSS NEGLIGENCE/RECKLESSNESS
### (Defendant Hefner, Defendant Daniel Hamilton, Defendant Victory Builders, LLC, Defendant TPM Properties Limited Partnership)

142.    Paragraphs 1 through 141 of the Complaint are incorporated by reference.

143.    Defendant Hefner's conduct, as set out above, was reckless and malicious, and public officer immunity therefore does not apply to their conduct.

144.    At the time the events occurred on in June 2021, Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM owed Ms. Johnston a duty of care with respect to their involvement in the detention, seizure, and arrest of Ms. Johnston for supposedly committing an offense.

145.    The duty of care owed to Ms. Johnston included, but was not limited to the following duties:

(a) To ensure that citizens were not wrongfully arrested and charged with crimes they did not commit;

(b) To ensure that only reliable and trustworthy evidence was used in making a detention, seizure, and arrest;

(c) To conduct or participate in criminal investigations professionally and with the goal of finding the truth; and

(d) as to a law enforcement officer, to follow proper law enforcement procedures and the United States Constitution in conducting all criminal investigations and arrests.

146.    The conduct of Defendant Hefner, Defendant Hamilton, and Defendants Builders and TPM was negligent, grossly negligent and reckless, and breached their duty of care to Ms. Johnston in failing to recognize that Ms. Johnston had not committed any offense.

147.    As a direct and foreseeable consequence of being arrested and prosecuted, Ms. Johnston suffered physical, emotional, and pecuniary injuries as described in this Complaint, and will continue to incur medical and other costs, to be proved through discovery and trial.

## COUNT VIII
## COMMON LAW NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

148.    Paragraphs 1 through 147 the Complaint are incorporated by reference.

149.    In the alternative to Count VII below, all of the Defendants have negligently inflicted upon Ms. Johnston emotional distress.

150.    Defendant Hamilton owed to Ms. Johnston a legal duty of care to act reasonably in carrying out their employment and agency while working on building homes and dealing with neighbors, including Ms. Johnston.

151.    Defendant Hamilton breached that duty when they engaged in orchestrating and arrest and prosecution of Ms. Johnston through a criminal proceeding despite lacking probable cause that Ms. Johnston had committed a crime or an ordinance violation or an act that would otherwise provide justification for the arrest and prosecution of a person.

152. Defendants Builders and TPM owed Ms. Johnston a duty of reasonable care as a member of the general public and citizen and resident of the neighborhood where they were privately developing and building houses, to ensure that their employees and agents, including Defendant Hamilton, performed their duties in a way that avoided endangering members of the public.

153. Defendants Builders and TPM breached that duty when they, acting through their employees and agents, including Defendant Hamilton, engaged in orchestrating and arrest and prosecution of Ms. Johnston through a criminal proceeding despite lacking probable cause that Ms. Johnston had committed a crime or an ordinance violation or an act that would otherwise provide justification for the arrest and prosecution of a person.

154. Defendant Hefner owed to Ms. Johnston a legal duty of care to act reasonably in carrying out his authority as a police officer with CCPD.

155. Defendant Hefner breached that duty when he engaged in the arrest and seizure of Ms. Johnston without probable cause that Ms. Johnston had committed a crime or a local ordinance violation.

156. Defendant City, as described *supra*, owed Ms. Johnston a duty of reasonable care as a member of the general public and citizen and resident of the City of Claremont, to ensure that their employees and agents, including the employees and agents of the city agencies it operated, performed their duties in a way that avoided endangering members of the public.

157. Defendant City breached that duty when they did not exercise reasonable care in training, supervising, and disciplining Defendant Hefner, resulting in the misconduct of its employee.

158. Ms. Johnston's injury—severe emotional distress—was the reasonably foreseeable result of each and all the Defendants' breach of their duty of reasonable care to Ms. Johnston.

159. Each and all Defendants' negligence did in fact cause Ms. Johnston to suffer severe emotional distress, including depression, anxiety, humiliation, embarrassment, low self-esteem and loss of enjoyment in life.

160. Ms. Johnston's severe emotional distress was the actual and proximate result of each and every Defendant's actions and inactions and the consequences proximately caused by them.

161. Ms. Johnston seeks and is entitled to actual and compensatory damages against each and all Defendants for the severe mental and emotional distress that she experienced during and because of each and all Defendants' acts or omissions.

## COUNT IX
## COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

162. Paragraphs 1 through 161 of the Complaint are incorporated by reference.

163. In the alternative to Count VI above, Defendants have intentionally inflicted upon Ms. Johnston emotional distress.

164.    Each of Defendants' conduct, as described above, was extreme, outrageous, and exceeded the bounds of civil society.

165.    Defendants acted intentionally and/or with reckless indifference to the likelihood that their conduct would cause Ms. Johnston severe emotional distress.

166.    The recklessly indifferent and intentional actions of Defendants did, in fact, cause Ms. Johnston to suffer severe emotional distress, including anxiety, depression, humiliation, embarrassment, low self-esteem and loss of enjoyment in life.

167.    Ms. Johnston seeks and is entitled to actual and compensatory damages against all Defendants for the severe mental and emotional distress that she experienced because of Defendants' acts or omissions.

## COUNT X
## RESPONDEAT SUPERIOR
**(Against Defendant Victory Builders, LLC and Defendant TPM Properties Limited Partnership)**

168.    Paragraphs 1 through 167 of the Complaint are incorporated by reference.

169.    In committing the acts alleged in Counts V, VI, and VII, above, Defendant Hamilton was an employee or agent of Defendant Victory Builders, LLC ("Defendant Builders") and Defendant TPM Properties Limited Partnership ("Defendant TPM"), acting within the scope of their employment or agency.

170.    Therefore, in addition to being directly liable as set out above, Defendant Builders and Defendant TPM are each liable as a principal for the torts committed by its employees and agents in the course and scope of their employment under the doctrine of respondeat superior.

## COUNT XI
## ASSAULT AND BATTERY
### (Defendant Hefner)

171.    Paragraphs 1 through 170 of the Complaint are incorporated by reference.

172.    Defendant Hefner has individually committed the torts of assault and battery upon Ms. Johnston.

173.    As described above, Defendant Hefner showed the intent to cause apprehension of an imminent offensive or harmful contact when he seized and arrested her without probable cause or other legal justification and shoved her into the back of his patrol car with her handcuffed behind her back and the cuffs ratcheted down tightly around her wrists leading to extreme pain and bruising.

174.    Ms. Johnston could not and did not meaningfully consent to this offensive touching and contact.

175.    As a direct and proximate result of this arrest and seizure, without probable cause, committed through offensive touching and contact without consent, Ms. Johnston has suffered physical, emotional, and pecuniary injuries as described in this Complaint, and will continue to incur medical and other costs, to be proved through discovery and trial.

176.    Ms. Johnston seeks and is entitled to actual and compensatory damages against Defendant Hefner for the severe physical injuries and severe mental and emotional distress that she experienced during and because of Defendant Hefner's conduct.

## COUNT XII PUNITIVE DAMAGES
### (Defendant Hefner, Defendant Hamilton, Defendant Victory Builders, LLC and Defendant TPM Properties Limited Partnership)

177.   Paragraphs 1 through 176 of the Complaint are incorporated by reference.

178.   The above-described conduct of Defendant Hefner, Defendant Hamilton, Defendant Builders, and Defendant TPM constituted willful and wanton conduct in reckless disregard of Ms. Johnston's rights and was without provocation, legal justification, or any excuse and also with malice.

179.   This willful and wanton conduct and with malice of Defendant Hefner, Defendant Hamilton, Defendant Builders, and Defendant TPM was designed to injure Ms. Johnston and did, in fact, injure Ms. Johnston.

180.   For the claims where they are directly liable, punitive damages should be awarded against Defendant Hefner, Defendant Hamilton, Defendant Builders, and Defendant TPM to punish these actors and to deter other potential defendants from the same or substantially similar intentional and reckless conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cheryl Johnston prays as follows:

1.   That this Court find Defendant Hamilton and Defendant City liable for the deprivation of Ms. Johnston's constitutional rights, in violation of 42 U.S.C. § 1983, and issue an award of damages in favor of Ms. Johnston accordingly;

2.   That this Court find Defendants liable for negligent infliction of emotional distress, or, in the alternative, intentional infliction of emotional distress, Defendant Hefner

liable for assault and battery, Defendants Hamilton, Builders, and TPM liable for common law malicious prosecution, and Defendants Builders and TPM liable under the doctrine of respondeat superior, and issue an award of damages in favor of Ms. Johnston accordingly;

3.      That this Court order Defendants to pay monetary damages in an amount to be determined at trial, but in any case, an amount exceeding twenty-five thousand dollars, including but not limited to Ms. Johnston's medical expenses, pain and suffering, mental anguish, and other damages that may be ascertained at trial;

4.      That this Court order Defendants Hefner, Hamilton, Builders, and TPM, to to pay punitive damages for actions where they are held directly liable and were motivated by malicious intent or involving reckless or callous indifference and willful and wanton conduct as to Ms. Johnston's federally protected rights, or as otherwise appropriate under applicable law;

5.      That this Court order Defendants to pay Ms. Johnston's cost of litigation and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988(b), § 1988(c), and all Defendants under other laws, as applicable;

6.      Pre-and Post-judgment interest at the highest lawful rate;

7.      Any and all additional damages to which Ms. Johnston might be entitled;

8.      That all damages and costs be assessed and enforced jointly and severally against all Defendants as appropriate and allowed by law; and,

9.      That this Court order any other relief that it deems just and proper.

## JURY DEMAND

**Plaintiff demands a trial by jury on all issues so triable.**


Respectfully submitted this 31st day of May, 2024.


**EDWARDS BEIGHTOL, LLC**
__/s/ Catharine E. Edwards_____
Catharine E. Edwards
NC Bar No. 52705
PO Box 6759
Raleigh, North Carolina 27628
T: (919) 636-5100
F: (919) 495-6868
E: cee@eblaw.com

**TARLTON LAW PLLC**
_/s/ Raymond C. Tarlton_____
Raymond C. Tarlton
NC Bar No. 38784
PO Box 91624
Raleigh, NC 27675
T: (919) 390-1278
F: (919) 246-6145
E: ray@tarltonfirm.com


*Attorneys for Plaintiff Cheryl Johnston*